UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| PATSY LEE, as Mother, Heir at Law, | ) | |
| and Administrator of the Estate of GRANVEL | ) | |
| LEE,[1] | ) | |
|     *Plaintiff*, | ) | |
| | ) | No. 1:02-CV-282 |
| v. | ) | |
| | ) | |
| OFFICER HENRY RITTER, OFFICER RAY, | ) | JUDGE CARTER |
| OFFICER WINKLER, individually and as | ) | |
| members of the Hamilton County Sheriff's | ) | |
| Department; JOHN CUPP, as Sheriff of | ) | |
| Hamilton County, Tennessee; and | ) | |
| HAMILTON COUNTY, TENNESSEE, | ) | |
| | ) | |
|     *Defendants*. | ) | |

## MEMORANDUM

This action arises out of an incident where officers employed by the Hamilton County

Sheriff's Department arrested Granvel Lee ("Plaintiff" or "Lee") on September 18, 2001, for

aggravated assault, aggravated kidnaping, possession of a weapon while under the influence, and

assault on a police officer. Plaintiff brings federal and state claims against defendants Hamilton

County ("County") and Sheriff John Cupp ("Sheriff Cupp") as the Sheriff of Hamilton County, and

against defendants Officer Henry Ritter ("Ritter"), Officer Marty Ray ("Ray"), and Lieutenant Ron

Winkler ("Winkler") both individually and in their official capacities as officers employed by the

---

[1]    Plaintiff, Patsy Lee, as Mother, Heir at Law, and Administrator of the Estate of
Granvel Lee was substituted as plaintiff when the original plaintiff, her son Granvel Lee, died in
October of 2003. For the sake of clarity, the Court will refer to Granvel Lee as "Lee" or "the
plaintiff."

1

County. Plaintiff seeks compensatory damages in the amount of $1,737,859.00, punitive damages in the amount of $250,000.00, attorney fees and costs under 42 U.S.C. § 1988.

Plaintiff asserts federal civil rights claims under 42 U.S.C. §§ 1983 and 1985 invoking the Court's subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 2201. Plaintiff claims he was falsely arrested without probable cause, falsely imprisoned in jail, and the police used excessive force in making the arrest thereby depriving Lee of rights secured to him by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. It is further alleged that the County and Sheriff Cupp are liable for the actions of its officers, Ritter, Ray, and Winkler, under § 1983 on the theory that the County failed to properly train and supervise them.

With regard to related tort claims brought under Tennessee law, plaintiff asserts a claim for negligence *per se*. The basis for the negligence *per se* claim is plaintiff's contention that the defendants violated four Tennessee statutes: (1) Tenn. Code Ann. § 39-13-101, assault; (2) Tenn. Code Ann. § 39-13-102, aggravated assault; (3) Tenn. Code Ann. § 39-13-302, false arrest and imprisonment; and (4) Tenn. Code Ann. § 39-16-403, official oppression. In addition, plaintiff brings state common law tort claims of assault and battery, false arrest, and false imprisonment. The complaint was amended to assert a claim for wrongful death alleging the defendants inflicted permanent serious physical injuries which resulted in plaintiff's death. The Court has supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367.

Presently before the Court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 (Doc. 27), plaintiff's late-filed motion for an extension of time in which to file his late-filed response to the motion for summary judgment (Doc. 30), and plaintiff's late-filed response (Doc. 31). Although the plaintiff has failed to provide any explanation whatsoever to explain the

untimeliness of his motion for an extension of time in which to file a response to the motion for summary judgment and the untimeliness of his response, the Court will generously GRANT plaintiff's late-filed motion for an extension of time in which to file a late response (Doc. 30). After reviewing the record, for the reasons set forth herein, the Court concludes defendants' motion for summary judgment will be GRANTED (Doc. 27).

## I.      Standard of Review

Under Fed. R. Civ. P. 56(c), the Court will render summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994), *cert. denied*, 516 U.S. 806 (1995); *Kentucky Div., Horsemen's Benev. & Prot. Assoc., Inc. v. Turfway Park Racing Assoc., Inc.*, 20 F.3d 1406, 1411 (6th Cir. 1994), and the Court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party, plaintiff Lee. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Oakland Gin Co., Inc. v. Marlow*, 44 F.3d 426, 429 (6th Cir. 1995); *City Management Corp. v. U.S. Chemical Co., Inc.*, 43 F.3d 244, 250 (6th Cir. 1994). The Court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Lansing Dairy*, 39 F.3d at 1347; *Horsemen's Benev.*, 20 F.3d at 1411; see also *Guarino v. Brookfield Township Trustees*, 980

F.2d 399, 404-06 (6th Cir. 1992) (holding courts do not have the responsibility to search the record *sua sponte* for genuine issues of material fact). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc*., 477 U.S. at 249; *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987). The standard for summary judgment mirrors the standard for directed verdict. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter summary judgment. *Id.; Lansing Dairy*, 39 F.3d at 1347; *Horsemen's Benev*., 20 F.3d at 1411.

In the instant case, the defendants have filed a properly-supported motion for summary judgment requiring the plaintiff to set forth specific facts showing that there is a genuine issue for trial. Therefore, plaintiff is required to come forward with some significant probative evidence to support his claim. *Celotex Corp. v. Catrett*, 477 U.S. at 324. Plaintiff has filed a response and an affidavit which consists mainly of inadmissible hearsay evidence. Inadmissible hearsay evidence may not be used to support or oppose a motion for summary judgment. *See Carter v. University of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003). This rule is grounded in the language of Federal Rule

of Civil Procedure 56(e) which states "[s]upporting and opposing affidavits shall be made *on personal knowledge*, shall set forth such facts *as would be admissible in evidence*, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e) (emphasis added).

## II.    Relevant Facts

At the outset, the Court observes that although plaintiff's complaint included a page that reflects the plaintiff signed a statement, under oath and before a notary public, verifying the information contained in the complaint was true, the amended complaint lacks any such oath and is signed only by plaintiff's counsel.  Consequently, although the original complaint constitutes plaintiff's sworn statement for purposes of considering the summary judgment motion under Rule 56 and may serve as an affidavit in opposition to a summary judgment motion since the verified complaint is properly supported and based on personal knowledge, *see Hamilton v. Roberts*, 165 F.3d 27 (Table Text at 1998 WL 639158, *5 (6th Cir. Sept. 10, 1998), *cert. denied*, 526 U.S. 1112 (1999); *Lavado v. Keohane,* 992 F.2d 601, 605 (6th Cir. 1993); *Williams v. Browman*, 981 F.2d 901, 903-05 (6th Cir. 1992); *Hooks v. Hooks*, 771 F.2d 935, 945-46 (6th Cir. 1985) (To the extent a plaintiff's sworn complaint contains factual allegations based on personal knowledge, it satisfies the requirements of Fed. R. Civ. P. 56(e) as an opposing  affidavit), the amended complaint, which is not a verified complaint, cannot serve as an affidavit in opposition to a summary judgment motion. The amended complaint supersedes all prior complaints.  *See Rhea v. Dollar Tree Stores, Inc.,* ___F.Supp.2d ___, 2005 WL 2561261 (W.D. Tenn. Feb. 2, 2005) ("In their Amended Complaint, Plaintiffs omitted the THRA claim for sexual orientation discrimination that was present in the Original Complaint.  Therefore, the Court GRANTS Defendants' motion to dismiss Plaintiff's

5

THRA sexual orientation discrimination claim."); *Lepard v. NBD Bank, a Div. of Bank One*, 384 F.3d 232, 234 (6th Cir. 2004).

Nevertheless, the Court has reviewed both complaints along with the response and affidavit filed by Patsy Lee; however, plaintiff has failed to clearly and convincingly establish the existence of a genuine issue of material fact. *See Kochins v. Linden-Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir. 1986). Hearsay statements which are inadmissible under the Federal Rules of Evidence and mere conclusory allegations made in a verified complaint are insufficient to withstand a summary judgment motion. *Hamilton*, 1998 WL 639158 at *5. Neither of the complaints, nor the response and affidavit filed in response to the motion for summary judgment reflect any facts explaining the reason for the arrest or a detailed description of the facts surrounding the arrest. The affidavit of Patsy Lee consists mainly of hearsay statements. In addition, her affidavit contains allegations and conclusions about things of which the she lacks direct knowledge and therefore, it is insufficient to establish a genuine issue of material fact. Consequently, even taken together, the complaints, the response, and the affidavit filed in response to the motion for summary judgment fail to clearly and convincingly establish the existence of a genuine issue of material fact.

The Court has reviewed the record in the light most favorable to plaintiff and makes the following findings of fact: The record reflects that on September 18, 2001, at approximately 1:27 a.m., officers were dispatched to an address on Green Pond Road. Rachel Smith ("Ms. Smith") called 911 claiming the plaintiff had been physically violent with her and was holding her against her will (Doc. 28-6, Affidavit of Henry Ritter; Doc. 31, Affidavit of Patsy Lee). Upon arrival at the address given by Ms. Smith, the officers discovered Ms. Smith and Michael McJunkin ("Mr. McJunkin") inside a black Jeep Cherokee locked within a gated security fence. Ms. Smith, the

driver of the vehicle, advised that plaintiff had pointed a gun at them and refused to open the gate for them to leave [Doc.28-3, Exhibit 2; Doc. 28-4, Exhibit 3; and Doc. 28-6, Affidavit of Henry Ritter].

Once the gate was unlocked by plaintiff's parents, the officers approached the residence and observed plaintiff sleeping on the bed in his house. According to Officer Ritter's affidavit, plaintiff was sleeping with a rifle next to his leg [Doc. 28-4, Arrest Report Affidavit of Complaint; Doc. 28-6, Affidavit of Henry Ritter]. According to the affidavit of Patsy Lee, she stood inside the door of her son's residence and saw that he was asleep but there was no gun by his side as stated in the police report. Therefore, as the Court's resolution of this motion for summary judgment is based on viewing the facts and all inferences drawn therefrom in the light most favorable to plaintiff, the Court finds plaintiff did not have a gun by his side. Officer Ray and Officer Ritter entered the house to effect the arrest, while Lt. Winkler remained outside with plaintiff's mother. When Ritter attempted to awaken Lee, plaintiff struck him with his left closed fist. The officers restrained plaintiff with an arm bar technique which he resisted for a time before the officers were able to handcuff him. The officers used force to restrain plaintiff and he alleges they beat him about his chest, back, and abdomen (Doc. 1). In her affidavit, Patsy Lee does not indicate she observed a beating but instead avers "[t]hey started pulling him [Granvel Lee] up by his shoulders and arms. . . . They started pushing him to the floor. . . . They both put their knees in his back, and he told them that they were hurting him. After Granvel was handcuffed, they picked him by the handcuffs and spun him around with his back facing the wall" (Doc. 31).

Plaintiff told the police he had been asleep and he denied any knowledge about the victims' complaint. The officers aver they observed a 9mm handgun laying next to plaintiff's right hand on

the bed and smelled an odor of alcohol about plaintiff, and he told the officers he had consumed 9-10 beers [Doc. 28-6].   According to Patsy Lee's affidavit, her son did not have a gun next to him as alleged in the police report but her affidavit reflects Officer Ritter picked up her son's .22 rifle from the cedar chest in his left hand and he had her son's handgun in his right hand [Doc. 31].

Pursuant to a request made by plaintiff, Ritter took plaintiff to Erlanger Medical Center where he was treated for a muscle strain and released.  Plaintiff was then transported to the Hamilton County Jail and charged with aggravated kidnaping, aggravated assault, possession of a handgun while under the influence, and assault on a police officer.  On December 11, 2001, Attorney Jerry Summers represented the plaintiff in General Sessions Court but because Officer Ray was not available, charges developed by him regarding the kidnaping and handgun offense could not be prosecuted and were dismissed.  The charge of assault on Ritter and the aggravated assault charge on Ms. Smith were bound over to the grand jury after a probable cause hearing [Doc. 29-4].  Plaintiff eventually pleaded guilty in Criminal Court to assault on a police officer and the aggravated assault charge was dismissed pursuant to a plea agreement [Doc. 28-5].

In October of 2003, more than two years after his arrest in this matter, plaintiff died.  The amended complaint alleges his injuries from the arrest ultimately resulted in his death.  Additionally, there are allegations that the officers failed to take proper action at the scene; the officers conspired to advise the complainants what to write in their statements; and the officers were inadequately trained.

## III.    Analysis

Defendants bring this motion for summary judgment against plaintiff claiming there are no material issues of fact as to the liability of any of the defendants.  Defendants assert plaintiff is not

8

entitled to relief on his claims under 42 U.S.C. § 1983 (including his failure to train and supervise claim against Sheriff Cupp and Hamilton County); 42 U.S.C. § 1985; state law claims for false arrest, false imprisonment, assault and battery; or his negligence *per se* claim based on the claim that the defendants committed criminal offenses of assault, aggravated assault, false arrest, false imprisonment, and official oppression.

A.    **42 U.S.C. § 1985**

Plaintiff does not specifically identify the subsection of 42 U.S.C. § 1985 that he contends is applicable to his case. Plaintiff does not clarify or discuss this deficiency. The Court and the defendants should not be placed in the position to have to guess as to which subsection of § 1985 is the basis for plaintiff's cause of action.

In the absence of an explanation and clarification from plaintiff, the Court infers that plaintiff seeks to rely solely upon § 1985(3) which provides in pertinent part:

> If two or more persons in any State ... conspire ...for the purpose of depriving, either directly or indirectly, any person or class or persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

The § 1985(3) claim must be dismissed as to all defendants. Plaintiff does not allege, and offers no proof showing, that he has been subjected to invidious discrimination that is actionable under 42 U.S.C. § 1985(3). To prevail under this statute, plaintiff is required to plead and be able to prove five essential elements: (1) a conspiracy between at least two persons; (2) the purpose or object of the conspiracy was to deprive plaintiff of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an overt act was committed by at least one of the conspirators in furtherance of the conspiracy; (4) the defendant's conduct caused plaintiff to suffer

9

personal injury, property damage, or a deprivation of any right or privilege of a citizen of the United States; and (5) the conspiracy was motivated by racial or other class-based discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971); *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003).

Although § 1985(3) applies to private conspiracies, it does not apply to all tortious interference with the rights of others. *Griffin*, 403 U.S. at 101. To make a viable claim under § 1985(3), plaintiff is required to prove there was some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' action. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993); *United States v. Brotherhood of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott,* 463 U.S. 825 (1983). Plaintiff is required to demonstrate that the alleged conspiracy was motivated by an intent to invidiously discriminate against him because he is a member of a protected class. *See Vakilian v. Shaw*, 335 F.3d at 518-19; *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir. 1992), *cert. denied*, 510 U.S. 842 (1993). There is no such proof presented by plaintiff in the instant case. The record reflects plaintiff is a white (Caucasian) male (Doc. 28-3).

"The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Griffin v. Breckenridge*, 403 U.S. at 102. The class-based, invidiously discriminatory animus required by § 1985(3) must be based on race, ethnic origin, sex, religion, or political loyalty. *Haverstick Enterprises, Inc. v. Financial Federal Credit,* 32 F.3d 989, 994 (6th Cir. 1994).

Plaintiff does not contend that he is a member of any of these classes of persons entitled to

10

protection under the Fourteenth Amendment's Equal Protection Clause and § 1985(3). Plaintiff does not allege and offers no proof showing that the defendants were motivated to conspire against him in violation of § 1985(3) based on his race, ethnic origin, sex, religion, or political loyalty.

Accordingly, plaintiff's § 1985(3) claim will be DISMISSED WITH PREJUDICE as to all defendants.

### B.      42 U.S.C. § 1983

Ray, Ritter, and Winkler are being sued in both their individual and official capacities. By bringing suit against these defendants in their official capacities, plaintiff is in effect suing the governmental entity that employs them, namely the County. *Hafer v. Melo*, 502 U.S. 21, 23-25 (1991). Because plaintiff's suit names Hamilton County as a defendant, naming these officers as defendants in their official capacities is redundant. Hamilton County is the proper party to address plaintiff's allegations against these officers in their official capacity. Accordingly, plaintiff's suit against these officers in their official capacity will be DISMISSED.

### 1.      Section 1983 Excessive Force Claim Against Officer Ray, Officer Ritter, and Lieutenant Winkler Individually

To prevail on a claim under 42 U.S.C. § 1983, plaintiff is required to plead and prove two essential elements: (1) the defendants deprived plaintiff of a right, privilege, or immunity secured to him by the United States Constitution, federal statute, or other federal law; and (2) the defendants caused the deprivation while acting under color of state law. *Gregory v. Shelby County, Tenn.* 220 F.3d 433, 441 (6th Cir. 2000). There is no dispute in the instant case that the officers were acting under color of state law.

Plaintiff maintains that the force used by the officers was not taken "in proper response to any action by Plaintiff or any complaint received at the scene, or not in any legitimate police interest

11

but with intentional excessive force used to gratify the officers' egos and aggravation at being called to the scene of the altercation with the other parties" (Doc. 15, Amended Complaint). This conclusory allegation is unsupported by any facts, but rather, the only reference to the force used is the following sentence: "The officers had beaten Plaintiff about the chest, back and abdomen and then talked again about what they were going to charge him with." (Doc. 15, Amended Complaint). However, even looking back to plaintiff's original complaint, the only allegation was a factually unsupported conclusion that "[t]he officers beat Plaintiff about the chest, back and abdomen and then talked again about what they were going to charge him with" (Doc. 1). These conclusions are not factually supported but rather, these conclusion are the extent of plaintiff's allegations. Patsy Lee's affidavit does not detail a beating of plaintiff but rather explains what she observed when officers were handcuffing her son. According to Patsy Lee's affidavit, the officers stood on either side of her sleeping son and "started pulling him by his shoulders and arms. Granvel woke up and saw Officer Ritter. He asked what was going on. They started pushing him to the floor. As they were pushing him Officer Ritter said to get on the floor, we've got some questions we need to ask you. They both put their knees in his back, and he told them they were hurting him. After Granvel was handcuffed, they picked him by the handcuffs and spun him around with his back facing the wall" (Doc.31). These allegations fail to demonstrate that plaintiff was beaten by the defendants. The record does not contain any probative evidence to support a claim that the defendants used excessive force when arresting plaintiff.

The officers maintain their use of force was objectively reasonable, thus, not excessive under the circumstances of this case. Additionally, defendant officers contend they are entitled to qualified immunity.

An arrestee has a constitutional right to be free from the use of excessive force during an arrest. *Holt v. Artis*, 843 F.2d 242, 246 (6th Cir. 1988). Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" test. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *Graham v. Connor*, 490 U.S. 386, 388 (1989). The reasonableness of an officer's actions is judged from the perspective of the officer on the scene, rather than with hindsight. *Graham v. Connor*, 490 at 396. When evaluating a claim of excessive force, a court must determine reasonableness by considering the severity of the crime involved, the threat to the safety of the officer posed by the suspect, and any resistance to arrest. *Id*.

The proper analysis of Plaintiff's claim of excessive force is under the Fourth Amendment because it allegedly occurred in connection with an arrest; thus, it is considered under the Fourth Amendment "reasonableness" standard identified in *Graham v. Connor*. The reasonableness of an arrest is judged from the perspective of the officer on the scene, rather than with hindsight. *Id*. at 396. Not every push or shove, even if it may later seem unnecessary, violates the Fourth Amendment. *Id*. The record before this Court clearly demonstrates plaintiff was not subjected to excessive and unreasonable force.

Based on the officers' observation of Ms. Smith and Mr. McJunkin being confined in a locked, gated fence; the statements of Ms. Smith and Mr. McJunkin that plaintiff refused to unlock the gate; and their statements that plaintiff had pointed a weapon at Ms. Smith in her vehicle, the officers had probable cause to arrest plaintiff. Once plaintiff struck Officer Ritter they had the right to use whatever force was necessary to subdue him. Plaintiff has not provided any probative evidence that reveals the officers used unreasonable force when handcuffing plaintiff. Indeed, the only medical record before the Court indicates, at most, that plaintiff suffered a muscle strain. There

13

is no proof before the Court that indicates the force was not applied in a good-faith effort only to maintain plaintiff so handcuffs could be applied. There is nothing in the record reflecting the force used was excessive or unreasonable, or that it was applied after plaintiff was subdued.

Ritter's affidavit acknowledges that some force was used in subduing plaintiff when he resisted arrest. Ritter admitted plaintiff was restrained with an arm bar technique which he resisted. Thus, the officers used force– an arm bar technique; according to plaintiff, beating him about the chest, back, and abdomen; and according to Patsy Lee, pushing him and putting their knees in plaintiff's back– until they were able to subdue plaintiff and subsequently handcuff him. Ritter maintains only that amount of force necessary to obtain plaintiff's compliance was used. Plaintiff was transported to Erlanger Medical Center at his request prior to being transported to the Hamilton County Jail. At Erlanger Medical Center, plaintiff was treated and released and the records reflect, at most, that he suffered a muscle strain (Doc. 28-2). Plaintiff has provided the court with nothing more than factually unsupported conclusions that the officers used "intentional excessive force." Plaintiff has not explained the circumstances or provided any of the details surrounding the officers beating him about his chest, back, and abdomen. Plaintiff did not identify which officers beat him, what they used to beat him, or any description of the facts surrounding the beating. Plaintiff has failed to refute Ritter's sworn affidavit that due to plaintiff's resistence, the officers used only that force which was necessary to handcuff plaintiff. There is nothing in the record to reflect that the beating of Lee about his chest, back, and abdomen in response to his resistance was excessive. Considering the largely conclusory affidavit of Patsy Lee which is primarily based on hearsay, along with the portion of the affidavit explaining her actual observations, Patsy Lee's affidavit does not contradict the relevant facts or identify a genuine issue of material fact. For example, there is no

14

denial that plaintiff hit Officer Ritter. Summary judgment is appropriate to dispose of factually unsupported claims or defenses. In the instant case plaintiff has offered no evidence to demonstrate the force used was excessive. Accordingly, the Court finds that defendants did not use excessive force in subduing plaintiff.

Here, defendants deny using excessive and unreasonable force. Defendants contend the force which was used was reasonable because plaintiff had threatened to shoot the victims while possessing a weapon; confined the victims in a locked, gated security fence; struck Ritter; and resisted arrest. Additionally, the only injury plaintiff sustained, according to the medical records, was a strained muscle. Under the facts of the instant case, the officers' actions in forcibly restraining plaintiff were objectively reasonable and did not amount to excessive force. However, for the sake of discussion, if we assume plaintiff has established the officers used excessive force, the defendant officers would be entitled to qualified immunity because the law does not clearly establish that defendants use of force and the amount of force used, under the circumstances of this case, would violate the Constitution.

Defendants Ritter, Ray, and Winkler raise the affirmative defense of qualified immunity from suit on all of plaintiff's federal and state law claims. Qualified immunity from civil liability for damages extends to government officials performing discretionary functions insofar as their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Thacker v. City of Columbus*, 328 F.3d. 244, 259 (6th Cir. 2003). The appropriateness of qualified immunity is a threshold legal question for the Court. *Harlow*, 457 U.S. at 818. Qualified immunity is immunity from suit rather than just a defense to liability.

In addressing qualified immunity claims, *Saucier v. Katz*, 533 U.S. 194 (2001) instructs that the Court must first determine whether "the facts alleged show the officer's conduct violated a constitutional right." *Id*. at 201. If plaintiff establishes that a constitutional violation occurred, then the Court must determine whether "the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Id.*; *see also Brosseau v. Haugen,* 543 U.S. 194 (2004) (reasonableness of officer's conduct is judged against the law at the time of the conduct). If the law at that time did not clearly establish that the officers' conduct would violate the Constitution, then they should not be subject to liability or the burdens of litigation.

The defendants' assertions of qualified immunity requires the Court to determine, in light of clearly established principles governing arrests and the use of excessive force, whether the officers objectively could have believed their conduct was lawful. The defendants' assertion of qualified immunity also requires the plaintiff to bear the burden of establishing that the constitutional right allegedly violated was sufficiently clear at the time of the alleged violation and in relation to the acts committed, "that a reasonable official would understand that his or her conduct violate[d] that right." *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991). The plaintiff may not allege the violation in terms of a general, abstract right in order to survive summary judgment. *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987). Rather, the plaintiff must establish that "in light of the pre-existing law the unlawfulness [was] apparent," *id*. at 640, such that "any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty

to have refrained from such conduct." *Poe v. Haydon*, 853 F.2d 418, 425 (6th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989).

16

The determination of whether such a clearly established legal right existed is to be decided by the court as a matter of law. *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir. 1987). If the "undisputed facts show that defendant's conduct ... did not violate [that] clearly established legal right[,]" the court must grant summary judgment for the defendant. *Id.* at 425.

Viewing the facts in the light most favorable to plaintiff, he has failed to show the violation of a clearly established right. However, as previously stated, for the sake of discussion, the Court will assume the officers used excessive force. The law was clear, at the time of plaintiff's arrest, that the use of unreasonable excessive force when arresting a suspect was unconstitutional. However, the law at the time of plaintiff's arrest did not clearly establish that the specific force used by the defendants to subdue plaintiff would violate the Constitution. Consequently, defendants are entitled to qualified immunity on plaintiff's excessive force claims.

In summary, plaintiff's vague and conclusory allegations of excessive force, absent any discussion or explanation of the relevant facts surrounding his arrest, in his complaint and response to the motion for summary judgment does not preclude entry of summary judgment on his excessive force claim. Once a properly supported summary judgment motion is filed, a plaintiff may not rely on mere conclusory statements lacking in detail; allegations in the complaint unsupported by proof; and hearsay statements contained in a responsive pleading and affidavit to make an issue of fact a proper jury question. Plaintiff has responded with no significant probative evidence and his factually unsupported conclusions contained in his complaint and the hearsay statements contained in Patsy Lee's affidavit fail to demonstrate a genuine issue of material fact exists. Plaintiff has not come forth with any proof indicating he did not resist arrest or any facts demonstrating that the force used to subdue him was excessive. Plaintiff has not disputed the essential facts surrounding the

arrest. Plaintiff's complaint fails to include facts relating to his actions and the officers' actions surrounding his arrest. Instead, plaintiff submitted factually unsupported conclusions that fail to rebut Ritter's affidavit and the properly supported motion for summary judgment. The evidence presently before the Court is evidence that the force the officers used, objectively assessed, was reasonable. Because there are no disputed issues of fact as to the extent of the force used by defendants Ritter, Ray, and Winkler during plaintiff's arrest and the reasonableness of the force in light of the circumstances, summary judgment is appropriate on the excessive force claim.

### 2. Arrest Without Probable Cause

Plaintiff brings a constitutional claim of false arrest and false imprisonment under the Fourth Amendment, claiming the defendants lacked probable cause to arrest him. Plaintiff claims his Fourth Amendment rights were violated because neither Ray, Ritter, or Winkler had probable cause to arrest him; thus, he was unlawfully arrested and imprisoned in violation of 42 U.S.C. § 1983. A false arrest by a police officer is one means of committing a false imprisonment. In the instant case, the claims of false arrest and false imprisonment are the same since the alleged false imprisonment arises out of the alleged false arrest by the defendant officers. *Walker v. Schaeffer,* 854 F.2d 138, 142 (6th Cir. 1988).

Plaintiff must prove a lack of probable cause in order to prevail on this Fourth Amendment claim. *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) ("[T]he Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty"). A plaintiff bringing a constitutional claim of false arrest under the Fourth Amendment must show that there was no probable cause for the arrest. *Beck v. Ohio*, 379 U.S. 89, 90-91 (1964); *Donovan v. Thames*, 105 F.3d 291, 297-98 (6th Cir. 1997). "The

18

Supreme Court has held that the test for whether an arrest is constitutionally valid is 'whether, at the moment the arrest was made, the officers had probable cause to make it- - whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *United States v. Dotson*, 49 F.3d 227, 229 (6th Cir.) (quoting *Beck*, 379 U.S. at 91), *cert. denied*, 516 U.S. 848 (1995). In assessing probable cause, one must examine all facts and circumstances within an officer's knowledge at the time of the arrest. *Thacker v. City of Columbus*, 328 F.3d at 255. Whether probable cause to arrest existed is a question of fact for the trier of fact unless there is only one reasonable conclusion possible. *Id*. at 255.

First, the Court must determine if plaintiff has alleged facts that, viewed in the light most favorable to him, demonstrates Ray, Ritter, and Winkler's conduct violated his Fourth Amendment constitutional right to be arrested only upon probable cause. Accordingly, the Court must determine whether the evidence, when construed most favorably to plaintiff, states a claim that the officers arrested him without probable cause.

According to the undisputed facts in the record, the officers responded to a call referred by 911. The 911 call was from Ms. Smith who indicated plaintiff had been physically violent with her and had refused to allow her to exit his property. Upon arrival, the officers observed Ms. Smith and Mr. McJunkin locked inside the security gate of plaintiff's property. Both victims told the officers that plaintiff had refused to open the gate to allow them to exit the premises; had been physically violent with Ms. Smith; and had pulled a weapon on Ms. Smith while she was in her vehicle. Both parties advised the officers they wanted to prosecute. After plaintiff's father opened the gate the officers entered the property, exited their vehicles, and observed plaintiff sleeping in his room.

When plaintiff failed to respond to the officers' knock on his door, they entered the house and attempted to awake plaintiff, who responded by striking Ritter with his left closed fist. Whereupon the officers restrained plaintiff with an arm bar technique which he resisted for a time before they were able to handcuff him. Plaintiff was advised of his *Miranda* rights and questioned about the incident [Doc. 28-6]. The officers smelled a strong odor of alcohol about plaintiff. Additionally, plaintiff admitted to previously drinking 9-10 beers and the officers confiscated a rifle and handgun.

The facts as recited by the defendants, except as to the location of the weapons, have not been contradicted by plaintiff. Plaintiff was arrested for assault on a police officer, aggravated assault, aggravated kidnaping, and possession of a handgun while under the influence.

"Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge 'were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.'" *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001) (citations omitted). The Sixth Circuit has explained the standard governing probable cause determinations:

> [W]e start with a few general principles. The most important of these is that the Fourth Amendment does not require that a police officer *know* a crime has occurred at the time the officer arrests or searches a suspect. *See United States v. Barrett*, 890 F.2d 855, 861 (6th Cir. 1989). The Fourth Amendment, after all, necessitates an inquiry into probabilities, not certainty. The Supreme Court has made clear that there is no precise formula for determining the existence or nonexistence of probable cause; rather, a reviewing court is to take into account the "factual and practical considerations of everyday life" that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred or is about to occur. *See Illinois v. Gates*, 462 U.S. 213, 231 . . . (1983). There is, of course, a requirement that the officers be able to articulate concrete facts from which they infer a probability that illegality has occurred. As we have consistently emphasized, however, while officers must show more than mere suspicion, the probable cause requirement does not require that they possess evidence sufficient to establish a prima facie case at trial, much less evidence sufficient to establish guilty beyond a reasonable doubt. *See, e.g., United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.

1990).

> The real question, then is this: at what point does a body of evidence amassed by a
> police officer against a particular suspect cross the line from merely raising a
> suspicion to establishing probable cause? . . . To find probable cause, the law does
> not require that we rule out every conceivable explanation other than a suspect's
> illegal conduct. Instead, we need only consider whether there are facts that, given
> the "factual and practical considerations of everyday life," could lead a reasonable
> person
> to believe that an illegal act has occurred or is about to occur. *See Gates,* 462 U.S.
> at 231[.]

*United States v. Strickland*, 144 F.3d 412, 415-16 (6th Cir. 1998).

"Probable cause requires only the probability of criminal activity not some type of 'prima

facie' showing." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1998). The probability of

criminal activity is assessed under a reasonableness standard based upon an examination of all facts

and circumstances within the officer's knowledge when he makes an arrest or obtains the warrant.

*See Hunter v. Bryant*, 502 U.S. 224, 228 (1991) ("[T]he court should ask whether the agents acted

reasonably under settled law in the circumstances, not whether another reasonable, or more

reasonable, interpretation of the events can be constructed . . . after the fact."). Probable cause must

be assessed from the perspective of a reasonable officer on the scene, rather than with the 20/20

vision of hindsight. *Gardenhire v Schubert*, 205 F.3d 303, 315 (6th Cir. 2000). "[T]he Fourth

Amendment does not require that a police officer *know* a crime occurred at the time the officer

arrests or searches a suspect." *Strickland*, 144 F.3d at 415. Once an officer has sufficient probable

cause to arrest, a further investigation is not required. *See Klein v. Long*, 275 F.3d 544 (6th Cir.

2001), *cert. denied*, 537 U.S. 819 (2002).

The officers relied upon the statements of Ms. Smith and Mr. McJunkin that plaintiff had

refused to unlock the security gate and had pulled a weapon on Ms. Smith, and their observations

of the victims' confinement in a locked, gated security fence established probable cause to arrest plaintiff for aggravated kidnaping and aggravated assault. The officers' observations of plaintiff striking Ritter and Ritter actually being struck by plaintiff gave the officers probable cause to arrest plaintiff for assault on an officer. Because the facts within the officers' knowledge along with the officers' observations established probable cause to arrest plaintiff, the officers did not violate his constitutional right to be free from an unlawful arrest.

Moreover, after a probable cause hearing in Hamilton County General Sessions Court, the aggravated assault charge involving Ms. Smith and the assault on a police officer charge were bound over to the grand jury upon a finding of probable cause by the judge. The grand jury returned a two-count indictment against plaintiff for assaulting Ms. Smith and Ritter. Plaintiff eventually pleaded guilty in Criminal Court to the assault on Ritter [Doc. 29-5]. Therefore, estoppel prevents the plaintiff from challenging the validity of his arrest on the claim that there was no probable cause to arrest him because the issue of probable cause was resolved when the sessions court judge determined probable cause existed, binding the two charges over to the grand jury. *See Wilson v. Johnson*, 2005 WL 2417057, *7-8 (E.D.Tenn. Sept. 30, 2005). In addition, plaintiff's guilty plea and judgment of conviction on the assault on a police officer charge in state criminal court prevents him from claiming he was falsely arrested/falsely imprisoned without probable cause. *Id.* at *9.

Plaintiff has not come forward to dispute the defendants' version of the facts nor do the facts contained in plaintiff's complaints or response to the motion for summary judgment contradict the defendants' version of the circumstances surrounding the arrest of plaintiff. In his complaint, plaintiff claims the "entire incident was caused by bad blood and continued harassment of plaintiff by the officers based on relationships Plaintiff had in the past with another woman" [Doc. 15]. This

factually unsupported claim is without merit because subjective intentions of police officers play no role in ordinary, probable-cause analysis under the Fourth Amendment. The subjective intentions and motives of the arresting police officers are immaterial to a proper analysis of plaintiff's Fourth Amendment claim of false arrest without probable cause. *Whren v. United States*, 517 U.S. 806, 813 (1996). "Probable cause necessary to justify an arrest is defined as 'whether at that moment [of the arrest] the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.'" *Wolfe v. Perry*, 412 F.3d 707, 716 (6th Cir. 2005) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

Applying the standards governing probable cause determinations to the facts before the Court, the officers' conclusion that there was probable cause to arrest plaintiff for these crimes was permissible under the circumstances. The facts available to the officers were sufficient to give rise to the conclusion that there was a reasonable probability that plaintiff committed the crimes of aggravated assault, aggravated kidnaping, and assault on a police officer. Consequently, viewing the evidence in the light most favorable to plaintiff, probable cause existed for his arrest. Therefore, defendants are entitled to summary judgment on plaintiff's § 1983 claim that the defendants arrested him without probable cause. Because the facts show the defendant officers possessed probable cause to arrest plaintiff, there was no constitutional violation.

However, even assuming that probable cause did not exist for the arrest of plaintiff, Ray, Ritter, and Winkler would be entitled to qualified immunity unless a reasonable officer would have known that the officers' alleged conduct violated a clearly established federal right. *See Harlow*, 457 U.S. at 818-19. To determine whether the officers are immune from suit, the Court uses an

"objective reasonableness" test. An officer will not be immune if it is objectively obvious that no reasonably competent officer would have concluded Plaintiff should have been arrested; "but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id.* An incorrect probable cause determination is not actionable if such determination passes the test of reasonableness. *Ireland v. Tunis*, 113 F.3d 1435, 1449 (6th Cir. 1997). Hence, the Court must analyze whether a competent officer in possession of Ray, Ritter, and Winkler's knowledge would have acted as they acted in this situation. Whether the right at issue was clearly established will depend on the particularized circumstances of the case. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The United States Supreme Court limited the application of the "clearly established law" requirement when they explained that:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 640. The United States Supreme Court has also "recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials–like other officials who act in ways they reasonably believe to be lawful–should not be held personally liable." *Id.* at 642.

This Court's inquiry focuses on whether a reasonable officer would believe, as the officers in the instant case did, that based on the statements of Ms. Smith and Mr. McJunkin, that probable cause existed to arrest plaintiff for aggravated assault and aggravated kidnaping and based on the officers' observations that probable cause existed to arrest plaintiff for assault on an officer. The

Court finds that a reasonable officer would believe probable cause existed under the circumstances of the instate case.

It is clearly established that reliance on the account of an eyewitness is sufficient to establish probable cause. *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). Ritter, in effect, avers he acted in good faith because his decision to effect an arrest was "[b]ased on my years of experience, I was concerned, given the victims' allegations of being held against their will, the alleged assault of Ms. Smith, and of Mr. Lee's being in possession of a weapon, that he posed a potential threat to me, the other officers, and the victims."[Doc. 28-6]. Once probable cause is established, an officer "is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers*, 188 F.3d at 371. Ultimately, two of the charges were sanctioned by a judge who agreed that probable cause existed on the charges of aggravated assault and assault on a police officer when he bound the charges over to the grand jury. The statements of Ms. Smith and Mr. McJunkin, which were submitted to the officers, reflect probable cause for aggravated assault and aggravated kidnaping. *See Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) ("Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . . will the shield of qualified immunity be lost"). The district attorney's dismissal of some of the charges against plaintiff does not invalidate the officers' finding that probable cause to arrest plaintiff existed. *See Chriss v. City of Kent*, 867 F.2d at 262(instructs that a subsequent dismissal of criminal charges has no retroactive impact on the validity of a probable cause determination made prior to an arrest).

The defendant officers arrested plaintiff based on the oral statements of Ms. Smith and Mr.

McJunkin, the fact the officers found the victims locked in a gated fence and plaintiff's assault of Ritter. The Court cannot say that it is clearly established that a person could not be arrested for aggravated assault, aggravated kidnaping, and assault on a police officer under these circumstances. Therefore, the Court finds that it was not clearly established that the circumstance with which these officers were confronted did not constitute probable cause. Accordingly, Ray, Ritter, and Winkler are entitled to qualified immunity for their conduct in the arrest, incarceration, and prosecution of plaintiff.

Accordingly, defendants' motion for summary judgment against the officers in their individual capacity and on plaintiff's federal claims of false arrest/false imprisonment without probable cause will be GRANTED.

### 3. Section 1983 Claims against the County and Sheriff

The § 1983 cause of action brought against the County and Sheriff Cupp will be dismissed.[2] Plaintiff is suing Sheriff Cupp in his official capacity as the Sheriff of Hamilton County based on his role in supervising the officers who allegedly committed constitutional violations. For a claimant to succeed on a claim of supervisory liability under § 1983, the claimant must show more than simply a supervisor's right to control employees, and cannot succeed solely on the theory of *respondeat superior. Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied*, 469 U.S. 845 (1984). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly

---

[2] Plaintiff sued the defendant officers in their individual and official capacities. The claim against the defendant officers in their official capacity is treated as being an action against Hamilton County, *see Hafer v. Melo*, 502 U.S. 21,25 (1991); thus, is disposed of in this section.

26

authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.* For example, a supervisor who possesses information indicating a strong likelihood of unconstitutional conduct by his subordinate may be liable. *See Curry v. Scott*, 249 F.3d 493, 505-06 (6th Cir. 2001)(The court concluded summary judgment should be denied because a trier of fact could find, based on the evidence submitted, that the supervisory defendants actually knew the officer posed a substantial risk of harm to prison inmates.)

In the instant case, there is no showing that Sheriff Cupp possessed information indicating a strong likelihood of unconstitutional conduct by the defendant officers. Plaintiff's factually unsupported claim in his complaint that "under information and belief, that this is not the first incident of unwarranted abuse of power and misuse of official position by these officers against Granvel Lee and that ...Sheriff Cupp ...had either actual or constructive knowledge of these problems but ... failed to act to prevent actions such as these leading to further harm or abuse by their officers[,]" is not sufficient to meet his burden. Plaintiff has submitted no evidence of a causal connection between Sheriff Cupp's supervision of the officers and the arrest made by these officers on September 18, 2001.

Moreover, the record reflects plaintiff sued Sheriff Cupp only in his official capacity and a suit against Sheriff Cupp in his official capacity is the equivalent of a suit against the governmental entity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 68 (1989). Because plaintiff's suit names Hamilton County as a defendant, naming Sheriff Cupp as a defendant in his official capacity is redundant. Hamilton County is the proper party to address the allegations of plaintiff's complaint. Accordingly, Sheriff Cupp is entitled to summary judgment and plaintiff's suit against Sheriff Cupp will be DISMISSED.

The County cannot be held vicariously liable pursuant to 42 U.S.C. § 1983 for constitutional torts committed by its employees based on the doctrine of *respondeat superior*. There is no *respondeat superior* liability under § 1983 for governmental entities. *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997); *Collins v. Harker Heights*, 503 U.S. 115, 121 (1992); and *Monell v. New York Department of Social Services*, 436 U.S. 658, 694 (1978). The County may not be sued by plaintiff under § 1983 solely on the basis that an injury has been inflicted on him by a county officer.

"Instead, it is when the execution of a government's policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. For the County to have liability under § 1983, plaintiff must demonstrate that the County, through its deliberate conduct, was the moving force behind the alleged deprivation of his federal constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Thus, plaintiff must show a direct causal link between the County's policy or custom and the alleged deprivation of plaintiff's constitutional rights. The first inquiry is whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *City of Canton*, 489 U.S. 385-86. Thus, plaintiff must prove his federal constitutional rights were violated as a result of the execution of a County policy or custom. Additionally, plaintiff has the burden to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3rd Cir. 1990); *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989).

Plaintiff has submitted no evidence that the County had a policy, custom, or practice of permitting the use of excessive force by its officers or arrests without probable cause. Indeed,

28

Sheriff Cupp's affidavit reflects the County's policy and procedures "specifically prohibits the use of excessive and unnecessary force in the performance of duty. . . . If after notice of intention to arrest the subject, he either flees or forcibly resists, the officer may use all necessary means to effect the arrest. However only the force necessary may be used, but no more ..." [Doc. 28-5].

A governmental entity can be held liable under § 1983 for its failure to properly train and supervise its employees. Thus, in the instant case, liability will exist for the County only if plaintiff can demonstrate the County's failure to train or supervise its employees evidences deliberate indifference to the rights of its inhabitants such that it, in effect, constitutes a governmental custom or policy. *City of Canton*, 489 U.S. 378. A showing of simple or even heightened negligence will not suffice. Deliberate indifference is a stringent standard of fault, greater than negligence, requiring proof that the County government disregarded a known or obvious consequence of its actions. *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. at 407-08.

Generally, to demonstrate that a governmental entity acted with deliberate indifference, a plaintiff must show that the entity was aware of prior unconstitutional actions of its employees and failed to respond. *Id.* It is not sufficient for a plaintiff in a § 1983 case to merely show that his specific injury could have been prevented or avoided with more or better training. *City of Canton*, 489 U.S. at 390-91.

This Court has reviewed the entire record in this case and plaintiff's problem is that he has not presented any proof to support his conclusory allegations that the County is liable under 42 U.S.C. § 1983 for failure to train and supervise Ray, Ritter, and Winkler. The evidence in the record, when viewed in the light most favorable to the plaintiff, is insufficient to establish a genuine issue of material fact of deliberate indifference on the part of the County or its Sheriff's Department.

There is no evidence of a custom or policy which encourages or condones the use of excessive force or effecting an arrest without probable cause on the part of the officers of the Hamilton County Sheriff's Department. Plaintiff cannot defeat the County's motion for summary judgment by resting on vague, conclusory statements in his complaint. Plaintiff is required under Fed. R. Civ. P. 56 to come forward with some probative evidence showing that, at the very least, there is a genuine issue of material fact in dispute which needs to be decided at trial. Plaintiff has failed to come forward with any evidence of a genuine issue of material fact. Accordingly, the motion of defendant Hamilton County for summary judgment will be GRANTED and plaintiff's action brought against the County under 42 U.S.C. § 1983 will be DISMISSED WITH PREJUDICE because plaintiff cannot prove the County is liable for the actions of Ray, Ritter, and Winkler.

### C.    Negligence Per Se: Assault Tenn. Code Ann. § 39-13-101; Aggravated Assault, Tenn. Code Ann. § 39-13-102; False Arrest and Imprisonment, Tenn. Code Ann. § 39-13-302; and Official Oppression Tenn. Code Ann. § 39-16-403

Plaintiff claims that the violation of the above referenced criminal statutes amounted to negligence *per se* as a matter of law. Plaintiff avers the defendants' actions were in violation of the above referenced statutes. The Court interprets this as a claim against the defendant officers and Hamilton County.

The basis for the negligence *per se* claim is Lee's contention that the County and its officers violated four Tennessee Statutes: (1) Tenn.Code Ann. § 39-13-101, assault; (2) Tenn.Code Ann. § 39-13-102, aggravated assault; (3) Tenn.Code Ann. § 39-13-302, false arrest and imprisonment; and (4) Tenn.Code Ann. § 39-16-403, official oppression.

The facts relied upon to support plaintiff's constitutional claims of false arrest/imprisonment and use of excessive force are the same facts plaintiff relies upon to support his claim that

30

defendants violated state criminal laws of assault, aggravated assault, and false arrest and imprisonment. Having concluded that the actions of the defendant officers that are the basis of plaintiff's assault, aggravated assault, and false arrest and imprisonment claims were objectively reasonable in the § 1983 context, the Court concludes plaintiff could not prove his state law claims of assault, aggravated assault, and false arrest/imprisonment. Likewise, since the officers' actions were reasonable, plaintiff is unable to demonstrate any liability on the part of Hamilton County. Accordingly, these claims will also be DISMISSED as to the County.

Plaintiff also contends the defendants committed official oppression in violation of Tenn. Code Ann. § 39-16-403. Official oppression can occur in two different ways: Section 39-16-403(a)(1) provides that a public servant acting under color of law or employment commits official oppression if he "[i]ntentionally subjects another to mistreatment or to arrest, detention, stop, frisk, halt, search seizure ... when the public servant knows the conduct is unlawful;" and section 39-16-403(a)(2) provides that a public servant acting under color of law or employment commits official oppression if he "[i]ntentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity, when the public servant knows the conduct is unlawful."

Plaintiff cannot prove that the defendants intentionally subjected him to mistreatment knowing that their conduct was unlawful. There is no proof plaintiff was subjected to mistreatment by the defendants that amounts to official oppression under § 39-16-403(a)(1). Based on the proof before the Court, a rational jury could not find the officers took advantage of their position as employees of the Hamilton County Sheriff's Department to intentionally subject plaintiff to mistreatment and oppression knowing their conduct was illegal. Plaintiff's allegations in his complaint and the hearsay statements in Patsy Lee's affidavit fail to provide a basis for a rational

jury to find that the conduct of Ray, Ritter, and Winkler constitutes intentional mistreatment and official oppression. When Ms. Smith and Mr. McJunkin advised the officers they were being held against their will inside plaintiff's security fence and that plaintiff had previously assaulted Ms. Smith and pointed a weapon at her while she was in her vehicle, it was reasonable for the officers to investigate the allegations. When plaintiff resisted arrest and struck Officer Ritter, it was reasonable for the officers to restrain him with an arm bar and use the amount of force necessary to handcuff him.

Plaintiff cannot prove under § 39-16-403(a)(1) that the defendants intentionally arrested him knowing their conduct was unlawful. The proof shows the defendants' conduct was lawful. Plaintiff's claim of false arrest/false imprisonment lacks merit. Collateral estoppel prevents plaintiff from relitigating the issue whether there was probable cause for the arrest. Consequently, plaintiff cannot prove the arrest and imprisonment were unlawful. The officers had a right to arrest plaintiff and take him to the Hamilton County Jail. Moreover, plaintiff cannot prove through clear evidence that the arrest/imprisonment were motivated by some unconstitutional action in violation of the Equal Protection Clause of the Fourteenth Amendment. Defendants' conduct was lawful, thus there is no basis to maintain a viable claim for official oppression under § 39-16-403(a)(1).

Likewise, plaintiff is unable to prove official oppression under § 39-16-403(a)(2). Basically the same analysis applies. The arrest/imprisonment were lawful; the defendants did not engage in selective enforcement of the law; and the police did not intentionally deny or impede plaintiff in the exercise or enjoyment of any right, privilege, power or immunity, knowing the conduct was unlawful. Plaintiff is unable to establish the defendants knowingly acted in an unlawful manner; thus, he is unable to prove official oppression. Additionally, having concluded that the actions of

the defendant officers that are the basis of the claims they violated the state criminal statutes for assault, aggravated assault, false arrest/imprisonment, and official oppression were objectively reasonable in the § 1983 context, the Court concludes plaintiff could not prove his claims under Tennessee law. Accordingly, the negligence *per se* claim will be DISMISSED as to all defendants including Hamilton County.

### D. State Law Claim of False Arrest/False Imprisonment

Plaintiff brings state law tort claims for false arrest and false imprisonment. A false arrest by a police officer is one means of committing a false imprisonment. In the instant case, the claims of false arrest and false imprisonment are the same since the alleged false imprisonment arises out of the alleged false arrest by the defendant officers. *Walker v. Schaeffer,* 854 F.2d 138, 142 (6th Cir. 1988). To prevail on his Tennessee common law claim of false arrest, plaintiff must prove that he was arrested without probable cause. *McLaughlin v. Smith*, 412 S.W.2d 21, 26-27 (Tenn.Ct.App.1966). Plaintiff also contends he was falsely imprisoned in the Hamilton County Jail after being arrested. Under Tennessee law, false imprisonment is the intentional restraint or detention of another without just cause. To prevail on his claim of false imprisonment/false arrest, plaintiff must prove two elements: (1) he was restrained or detained against his will by the defendants; and (2) the restraint or detention was unlawful. *Bryant-Bruce v. Vanderbilt University, Inc.,* 974 F.Supp. 1127, 1145 (M.D. Tenn. 1997); *Raines v. Shoney's Inc.,* 909 F.Supp. 1070, 1082 (E.D. Tenn. 1995); *Coffee v. Peterbuilt of Nashville, Inc.,* 795 S.W.2d 656, 659 (Tenn. 1990). Plaintiff is required to prove he was arrested without probable cause to prove the false arrest/false imprisonment claim.

The tort claim for false arrest/false imprisonment brought under Tennessee common law

33

must be dismissed as to all defendants. Lee cannot prove that he was arrested and incarcerated without probable cause. Probable cause was established in the state court proceedings when the Sessions Court Judge bound the charges of aggravated assault and assault on a police officer over to the grand jury after a probable cause hearing which resulted in an indictment on both charges. The existence of probable cause is a complete defense to the false arrest/false imprisonment claims.

Hamilton County has sovereign immunity from suit on plaintiff's false arrest/false imprisonment claim. The doctrine of sovereign immunity, acknowledged in Tennessee's common law for over a century, provides the suit may not be brought against a governmental entity in Tennessee unless it consents to be sued. *Doyle v. Frost*, 49 S.W.3d 853, 857 (Tenn. 2001). The County's liability for torts committed by its employees and agents is governed by the Tennessee Governmental Tort Liabilities Act ("GTLA"), Tenn. Code Ann. §§29-20-101 – 29-20-407. GTLA codifies the Tennessee common law rule of sovereign immunity for counties, municipalities, and other governmental entities, affirming that counties in Tennessee are immune from suit with certain narrow exceptions identified in GTLA. *Baines v. Wilson County*, 86 S.W.3d 575, 578-79 (Tenn.Ct.App. 2002). The limited waiver of sovereign immunity in GTLA is in derogation of Tennessee common law and must be strictly construed. *Limbaugh v. Coffee Medical Center*, 59 S.W.3d 73, 83-84 (Tenn. 2001); *Doyle*, 49 S.W.3d at 858; *Ezell v. Cockrell*, 902 S.W.2d 394, 399 (Tenn.1995); *Fortenberry v. George*, 2002 WL 1446675, at *3 (Tenn.Ct.App. 2002).

Under GTLA, Hamilton County is generally subject to suit for civil claims sounding in negligence. *Limbaugh*, 59 S.W.3d at 79; *Doyle*, 49 S.W.3d at 858. Tenn.Code Ann. § 29-20-205(2) provides in pertinent part that immunity from suit of all governmental entities is removed (waived) for injury proximately caused by a negligent act or omission of any employee within the scope of

his employment except if the injury arises out of false imprisonment, false arrest, or civil rights. Hamilton County is immune from suit for claims listed in the exceptions in Tenn.Code Ann. § 29-20-205(2). Tenn.Code Ann. § 29-20-310(a) of the GTLA provides that before a governmental entity may be held liable in damages, a court must determine: (1) the acts of the employee were negligent and the proximate cause of the plaintiff's injury; (2) the employee was acting within the scope of his employment; and (3) none of the exceptions provided in § 29-20-205 apply.

The Court concludes Hamilton County is immune from suit under GTLA on plaintiff's tort claim of false arrest/false imprisonment. False arrest/false imprisonment are intentional torts and do not sound in negligence. *See Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W. 2d 656, 660 (Tenn. 1990). Moreover, Tenn. Code Ann. § 29-20-205(2) expressly provides that governmental entitles are immune from suit for injuries "arising out of false arrest/false imprisonment." To the extent plaintiff asserts a tort claim against Hamilton County for false arrest/false imprisonment, the claim must be dismissed on the ground that Hamilton County is immune from suit under GTLA. *Fortenberry v. George*, 2002 WL 1446675 (Tenn.Ct.App. 2002); Tenn. Code Ann. §§ 29-20-101, 29-20-407.

Plaintiff's state law claims under false arrest/false imprisonment will be DISMISSED as to all defendants.

### E.     State Law Claim of Assault and Battery

Plaintiff also avers defendants were guilty of common law assault and battery (Doc. 15, ¶ VIII). The common law definition of assault is "any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against that person." *Thompson v. Williamson County, Tenn.*, 965

35

F.Supp. 1026 (M.D. Tenn. 1997), *aff'd Thompson v. Williamson County, Tennessee*, 219 F.3d 555 (6th Cir. 2000) . "A 'battery' is 'any intentional, unlawful and harmful (or offensive) contact by one person with the person of another.'" *Id*. (quoting *Raines v. Shoney's, Inc.,* 909 F.Supp. 1070, 1083 (E.D. Tenn. 1995)).  In Tennessee there cannot be an assault and battery without an intentional injury of the person upon whom the wrong is inflicted.  *Id.* at 1038.  The facts before the Court demonstrate that the defendant officers did not intentionally injure Lee, but rather, the strained muscle was a result of self-defense on Ritter's part and defendant officers attempting to subdue plaintiff in order to effect an arrest.  Having concluded that the actions of the defendant officers that are the basis of plaintiff's assault and battery claim were objectively reasonable in the § 1983 context, the Court concludes plaintiff could not prove his claim of assault and battery under Tennessee law.  In light of the ruling on plaintiff's § 1983 claim of excessive force, *i.e.*, granting summary judgment to all defendants because the force used by the defendants officers was objectively reasonable to subdue plaintiff and handcuff him, the Court finds that the record requires summary judgment for all defendants on the claim of assault and battery.

In conclusion, plaintiff has failed to show an assault and battery occurred.  Consequently, plaintiff has failed to demonstrate the existence of a genuine issue remaining for trial, rendering summary judgment appropriate on his state law claim of assault and battery.

### F.    Wrongful Death Claim

Plaintiff died more than two years after suffering a muscle strain from this arrest.  In his complaint, plaintiff avers that as a result of defendants' actions, he received unidentified painful and serious physical harm which was permanent and resulted in his subsequent death.  Plaintiff provides absolutely no factual support or medical proof for this conclusion.  Patsy Lee avers in her affidavit

36

that "[o]n the 20th I took Ray to Erlanger at Soddy Daisy where his injuries were reported. He had multiple contusions, abrasions and hematomas. X-rays were taken" (Doc. 31).[3]

In Patsy Lee's affidavit, there is no allegation that she had inspected plaintiff's body prior to his arrest and that these alleged injuries were not present. There are no medical reports to substantiate the alleged injuries or any reliable proof of the cause of these alleged injuries. There is nothing in the record to reflect that these injuries were not the result of some altercation while plaintiff was being held in the Hamilton County Jail or a result of some incident that occurred prior to plaintiff's arrest. The affidavit does not reflect that Patsy Lee, herself, observed these allege injuries. However, assuming these injuries were the result of the defendant officers actions in arresting plaintiff, there is nothing before this Court to indicate these injuries resulted in plaintiff's death. A representative of an estate may pursue a § 1983 claim on behalf of a decedent and seek compensatory damages for alleged violations of the decedent's constitutional rights that cause the decedent's death, *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000). However, to obtain compensation for alleged injuries, there must be reliable proof of that the alleged injuries caused the decedent's death.

Defendants have filed medical records from plaintiff's initial visit to Erlanger which fail to

---

[3]    To prevail on an excessive force claim courts have found that the actual injury must be more than *de minimis*. Thus, an allegation that a *de minimis* injury caused death must be supported by more than a mere allegation. Some signification probative evidence, such as medical records, must be submitted to prove such a claim. A *de minimis* physical injury has been described as follows: "A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which last even up to two or three weeks. People in regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care." *Jackson v. Johnson*, 2005 WL 1676687 (M.D. Ga. June 17, 2005).

reflect any injury other than, arguably, a muscle strain (Doc. 28-2). Plaintiff has failed to provide any reliable proof that the plaintiff died as a result of any injury he suffered as a result of the defendants arresting him.

In the instant case, defendants have submitted the medical records evidencing plaintiff's medical care immediately subsequent to his arrest, thus, carrying their initial burden of showing that there are no genuine issues of material fact in dispute as to the cause of plaintiff's death. Consequently, the burden shifts to plaintiff to present specific facts demonstrating a genuine issue for trial. *See Matsushita Elec. Induc. Co., Ltd., v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). In order to defeat defendants' motion for summary judgment, plaintiff must present some significantly probative evidence in support of the complaint, specifically, in support of his allegation that the injuries sustained as a result of his arrest caused his death.

In the instant case, the defendants have demonstrated an absence of disputed material facts as to the cause of plaintiff's death. Thus, to refute this showing, plaintiff must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex Corp.,* 477 U.S. at 322. A mere scintilla of evidence is not sufficient. *Anderson v. Liberty Lobby Inc.*, 477 U.S. at 252. The plaintiff has failed to produce sufficient significant probative evidence, beyond the bare allegations of the complaint and Patsy Lee's factually unsupported or hearsay statements, to support this wrongful death claim. Plaintiff has failed to provide any medical proof whatsoever to support the wrongful death claim. There is no proof before the Court that even permits the Court to infer any of the defendants' actions caused plaintiff's death. The plaintiff has not offered any medical proof as to the cause of his death or any expert proof establishing a causal connection between any injury he allegedly sustained as a result of his arrest

38

and his subsequent death. Consequently, absent a showing that any injury he sustained as a result of his arrest was the proximate cause of plaintiff's death, there is no genuine issue of material fact regarding the cause of plaintiff's death. Accordingly, summary judgment is appropriate.

### G.      42 U.S.C. § 1988

Presumably plaintiff seeks attorney fees and expenses pursuant to 42 U.S.C. § 1988. Section 1988 provides that a prevailing party in a § 1983 is entitled to recover reasonable attorney fees and costs. Because plaintiff is not a prevailing party in this action, plaintiff is not entitled to attorney fees or expenses. *Jacox v. Johnson*, 2004 WL 1070676 (W.D. Tenn. 2004).

## IV.      Conclusion

Accordingly, defendants' motion for summary judgment (Doc. 27) will be GRANTED and plaintiff's complaint will be DISMISSED.

A separate judgment will enter.


                                             s/William B. Mitchell Carter
                                             UNITED STATES MAGISTRATE JUDGE